May it please the Court, my name is Thad Smustowski and I represent the plaintiffs in this action. Our central argument is that the District Court erred in making ultimate determinations in the summary judgment context concerning the defamatory meaning and existence of false factual assertions contained in statements made by the defendants, when instead the Court should have analyzed whether these statements were capable of being defamatory and containing false factual assertions. In such a circumstance, the Reviewing Court is required to make all reasonable inferences in favor of the non-moving party and must review disputed statements from the perspective of the average reader of the journal. With regard to the question of opinion and whether a statement can be fairly read to express a fact that may be couched in the language of an opinion, the Reviewing Court does not determine whether the opinion does imply factual assertions, but rather a Reviewing Court engages in a threshold inquiry of whether a statement of opinion is capable of being interpreted to imply a factual assertion. Viewing the record in the light most favorable to the non-moving party, if the Reviewing Court concludes that the average reader could reasonably understand the statement as either fact or opinion, the question of which it will be is submitted to the jury. These are fundamental principles of interpretation that a Reviewing Court must apply in the context of a defamation action like this, and the First Amendment doesn't alter these principles one bit. And I would like, with regard to the article about our former CEO and President, Mr. Fink, I'd like to point the Court to the plaintiffs or the defendant. I typically represent defendants, so if I confuse these two, I apologize. And Chop Hardenberg, the defendant journalist in this case, was testified at his deposition, page 92, lines 6 through 25, and at that part in his deposition I was talking about reputational harm. And Mr. Hardenberg testified that Mr. Fink's reputation in the railroad industry is so awful that even if these were defamatory, his reputation wasn't injured. And on the specific issue of whether the statements could hold a defamatory meaning to the average reader, I said, but assuming that this is a reader who is not familiar with Mr. Fink's reputation as you just contend his reputation to be, if he is in the public eye, as you contend he's in the public eye, do you agree with me that your article tends to injure his reputation? Your article which states that his owner and boss fired him from leadership of his company by means of the administration of a coup de grace. Mr. Hardenberg testified, I'm having a hard time imagining any reader in that situation. Let's say somebody in China, somebody in China in an airport in Shanghai and picks up Pan Am, a new don, Pan Am owner Tim Mellon removed David Fink pair. I think that a reasonable, a person in Shanghai would read that and say, gee, maybe David Fink, David Andrew Fink did something wrong. That's the plaintiff. And yet the court is saying the only thing a reasonable reader of this journal could conclude in reading the article. Could I ask you on that? You said that the test was what, the average reader of the journal? Yes, that's the test. But I take that's presumably not the reader in Shanghai. Yeah, and the only reason I posited that is because. Yeah, no, I'm just, just as far as the test that we're supposed to apply is what would the average reader of the journal have thought. But it's even stronger because he's testifying that Mr. Fink's reputation is so bad that of course they're going to assume he did something wrong. You know, by saying the CEO and president of a vibrant going concern like Pan Am Systems is removed by his boss from management. And to say that that doesn't imply to a reasonable reader that his boss lost confidence in him is hard for me to accept. The mic is not picking you up. You have to stay close enough to it. Sorry about that, Your Honor. It's hard for me to accept. And I think it should be hard for the court to accept. That's not how the world works. And in that article as well were suggested issues that he failed at in his administration of the railroad. And that's the Fink article. When you go to the next article, when you go to the Hazmat issue, And the assertion is that Pan Am loses railcars. And loses railcars where federal law requires that they be tracked and that they be moved on down the line within 48 hours. And not only does Pan Am routinely lose them on a consistent basis, but in one instance lost one for 60 hours. To say that, well, lose, the term lose was in quotes and therefore it's ambiguous and therefore it can't mean what it actually says, which is we violate federal law because we lose track of our Hazmat cars. It's very difficult. Can I ask you, it seemed to me at least possible this wouldn't mean you lose, because that might mean it's just a jury question, but I'm just trying to understand. Couldn't lose mean not available for service? Yes. Is that actually, do we have anything in the record that indicates to us what's meant there? Because there's nothing, just reading that discussion in context, there's nothing that suggests to me a Hazmat truck has literally been lost so that you don't know where it is. In the context of that paragraph, the more natural reading to me seems to be what they're suggesting is that it's not available for service. That's why they talk about the difficulty of switching, et cetera. But I don't know if there's anything in the record that illuminates the context there. I would argue that that's a very narrow reading, and I don't think that, and I would take issue with your interpretation as that being the natural reading. But what I would concede is that is a reading. My point is that goes to the jury. So what? You can't say when it says, in addition, after criticizing the price that the shippers are required to pay by the railroad, because what the railroad does with Hazmat cars is sometimes, if they're particularly toxic, it will send them in a dedicated train so that there's no question about switching and losing track of. Even though we have a computerized system, we've never had an instance where we've lost track of. That's what the affidavit testimony establishes. But just to make sure, if these are particularly toxic, sometimes they're sent in a dedicated train, and that costs more for the shipper, and he's complaining about that in the beginning of this. Maybe you could just help me if there's any precedent that illuminates on this. So sometimes you can use a word that has a specialized technical meaning, and also that word has a more colloquial meaning. And within the world of the technical community, you'd get what the meaning is. So this is maybe not a great example. A reasonable reader would get it. Right, you say the Cardinals clubbed the Reds. Well, I assume that doesn't mean they clubbed them, but they beat them. So, okay, you lost the rail cars. Well, that could mean it's out of service, or it could mean it's disappeared, we don't know where it is. And I guess I'm just trying to figure out, for purposes of a defamation action, it can't be the case that any time you use a word that could bear a defamatory meaning, we just always assume it must be, and that says it's capable. I would have thought it's got to be a more contextual thing. The average reader, this is a specialized industry. So I'm just wondering, do you have the burden of showing it's got a capable of a defamatory meaning? If you have that burden, is there anything in the record to indicate that the natural reading an average reader in this industry would give to the word lost rail cars would be that it literally was lost? No, we don't have an expert witness to say that lost in the context of mentioning that the railroad cars, on a consistent, ongoing basis, including one car, lost for over 60 days, okay? And then what's the very next statement? Even though certain DHS and DOT statutes require carriers to release cars within 48 hours. Everybody knows in the railroad industry that when you're dealing with hazardous materials cars, they have to be moved down the line in 48 hours. They cannot sit at a crossing. They can't sit in a yard. That doesn't mean you've lost track of them. Yes, it does. I thought it would just mean you may know where it is. You just haven't released it. Oh, okay. Granted. The implication here is you're violating the 48-hour rule. Okay, but is there anything, do we know from this whether that's, so that's the claim? It's not that you literally lost it. It's the claim, the defamatory claim is that even though you knew where it was, you had violated the 48-hour rule? The claim is it doesn't matter how you interpret it, whether it's lost literally, whether it's misplaced. It doesn't matter. Did you make that clear below, that's what I guess, that your argument was that it was defamatory, even if it wasn't known to you where it was, but that it was just in potential violation of the reg? Yes, yes, because you have, I mean, that's the whole point. You're not moving these cars in 48 hours. Now, the assertion here is you're not doing it because you don't know where they are or your system is messed up somehow so that it hasn't switched in time, but the issue is you haven't switched them in time. And you're violating that 48-hour rule. Everybody in the industry knows about the 48-hour rule. That's why it's stated right here. Even though the statutes say you've got to move them, you didn't move them. Now, it says you lost them. And that is capable of defamatory meaning in the context of this statement. How so? I just want you to repeat it. Because if you're arguing, if you're stating that we lose cars on a routine basis and in one instance we lost a car for over 60 days, however you define that, it wasn't switched in 48 hours as the law requires, that's defamatory. That says we're violating federal law. Okay. And we have to have a system that tracks these cars such that they get moved in 48 hours. When they're really toxic, sometimes we require that they be in a single train. But we don't have instances of having lost them. And that's what our affidavit says. And he's responsible for the system. You want to touch on the district court's ruling about these being matters of public concern? Right. Our position on this, after discovery in the year 2015 now, because the district court bifurcated the case three years ago and it's gone in fits and starts, but out of First Amendment concerns, of course over our strenuous objections, but right out of the gate the court said, you know what? This issue of public concern was also raised in a case in which you were a plaintiff, at least some of you were a plaintiff, Mr. Fink. The parties weren't exact but mostly exact. And it was decided back then that as a matter of law in that case, it was a matter of public concern, the issues in that case. It was a different case, number one. It was a different time period, number two. All we're saying is, look, give us a chance to discover this. Right out of the blocks you're ruling as a matter of law based on a case that happened in another jurisdiction 12 years earlier. And based on that, now it may be that after we conduct discovery, your analysis very much is similar to that analysis and you use the same reasoning and you come to the same conclusion. But you're jumping the gun here to just knock the issue right out of the blocks in the context of a motion to dismiss. That's our position. Well, arguably the article about the discharge of care might not fall within that category. But what about the other two articles? Why wouldn't those be matters of public concern? As I said, there's certainly an argument that I would candidly say, I don't know if we're going to win that when we go to the mat on that. And I know you're trying to draw me out on that, Your Honor, and I don't want to. Yes, and I'm sorry. But candidly I'll say, this much anyway, that's an issue we're going to have to contend with. Because certainly hazardous materials are issues of public concern. They're safety issues. As well as conditions of the railways. Pardon? As well as safety conditions of the railways. Especially as they affect cars traveling on the lines, of course. So that's an issue. I don't think that wins the day. But for me not necessarily. But for me not to say from a doctrinal standpoint that that's not an issue. Well, of course it is. Of course it is. Because the rail lines have been regulated. Of industries in this country, the airlines and the railroads historically, I think, are the most regulated service industries in the nation's history. I can tell you, recite all of the agencies that oversee our operations. But they're very comprehensive. Perfect timing. Thank you. Good morning. May it please the Court. I'm Russell Pierce. And I'm here on behalf of the defendants. Atlantic Northeast Rails and Ports, which is a small trade newsletter based in Maine, and also sued individually was Chalmers Hardenberg, who is the only editor of the newsletter and its primary journalist. And was the person who wrote each of the statements that are an issue here. I think that the fundamental disagreement on appeal really is the court's review on a summary judgment record on the question of whether a statement is actionable. In any defamation case, there are constitutional limits on the type of speech that is actionable. And that conceptually breaks down into basically two categories, which I think have emerged. You can start with New York Times versus Sullivan in 1964 and go through to Milkovich versus Lorraine Journal. But what it comes down to is that there are certain, and Levinsky's case from this court I think outlines this as good precedent from 1997, breaks down into two kind of categories of speech that are not actionable. Imaginative expression, rhetorical hyperbole, exaggeration, loose language, a parody. Regardless of whether you can extract the most negative innuendo from speech like that, name calling is another example that was used in the Levinsky case. If someone's called a name, rarely do we take that statement literally. And so the Milkovich court was careful in preserving this category of speech as an exception, as a protected area of speech in order to further the robust freedom of expression that the First Amendment protects. Some of the statements in issue in this case fall into that category. The New Hampshire Rail Transit Authority official's statements that the track system, or the railroad system, is horrendously dilapidated. That falls into that category. Oftentimes the adjectives or the adverbs are going to be a signal that you're in the area of loose figurative language. We think the lost car, especially where the use of scare quotes is part of the internal quotation, also signifies exactly, in fact, that you're not to take this word literally. That's what that figure of speech, of using scare quotes, is meant to convey. Then there's the other category. Wait, before you leave that, what do you say to the other side's argument that it doesn't matter if loose is interpreted that way? If it's out of service for more than 48 hours, that's a problem? It does matter. I think we turn to the precedent that says words of variable meaning. For example, the trashy term that was in issue in the Levinsky's case. You can draw a defamatory negative meaning from that. But I took the argument this morning to mean that you don't have to have the definition of loose mean they didn't know where it was in order for it to be defamatory in this case. Now I have to be frank with you and tell you that I don't recall seeing that argument before this morning, but what's your response? I hadn't seen it before this morning either, but the point is that if it is susceptible to variable meaning, the judgment goes in favor of the defendant. That can't be right if all of the variations of the meaning are defamatory. So which is the non-defamatory variation that you have in mind? It's exaggeration. What's being exaggerated? It's saying cars are lost. It means they're not literally lost. Or the service is inconsistent. That's the alternative meaning? What do you say then to the argument that that's a statement that itself is defamatory? I don't think that in context, right in context where this phrase follows a previous sentence where the speaker is talking about inconsistency of service and complaining about cars having to be switched. And that's the subject, the context of the speech that we agree with the district court. I took the argument this morning though to be that if it's out of service, that's my phrase, I hope you get the meaning, for more than 48 hours, that statement, if not true, is defamatory. Because it implies this violation of federal law. The statement read in context, that's our point. Where you have lost in quotations and the speaker is talking about inconsistency of service. Also I would point out too. It may be that this is not the argument plaintiff makes. What they argued to us was it was defamatory because it was literally lost. But I get that, but just now that we're down this road, it says, the statement is, the railroad loses cars on a consistent ongoing basis, even though certain DHS and DOT statutes require carriers to release cars within 48 hours. Right, and you will see in our statement of facts, just as a clarification on the factual record here. When the complaint was dismissed the first round, Mr. Hardenberg followed up with a statement that said, as a result of that decision, followed up with the source for this quote that's an issue. And the source clarified to the sources counsel that when the statement lost cars was used, they were not intending to refer to TIH material or TIH toxic inhalation cars. And that clarification was published by Mr. Hardenberg and by the trade newsletter, clarifying the article. I think that's an important nuance, because then when the amended complaint comes forward, after that clear published clarification has been made, it reinforces that the case is really their claim that lost should be taken literally and they should be used. The other point I would make also is we tried to flesh out the record on this, even with regard to TIH cars. We asked the plaintiff to produce all records. Everything they talk about, data logs and tracking systems, we did not receive those records. There's no records of, you know, business-generated computer tracking system records that show that there was a loss of cars. That they never lose track or have unavailable a car or a TIH car. And this is important, because when you get to the alternative substantial truth issue on this statement, under, again, now we come to the matter of public concern question. If under the Philadelphia newspapers versus HAPS case, this is a statement about a matter of public concern, then the burden of proof on truth or falsity shifts. And under common law, the statement is presumed false. If it's a matter of public concern, the HAPS case shifts the burden now to the plaintiff to prove that the statement is false. So there's a presumption of truth to the statement. So going into the analysis, even if you can read lost cars literally, let's indulge that. Let's look at, well, have they ever lost a car? That it's presumed to be true, burden shifts to the plaintiff. We would think that on summary judgment, where there at least has to be some substantial evidence to generate an issue of fact on the statement, on the truth issue, that the plaintiffs would come forward if they say they have tracking logs that show every single delivery that they made to this Jones Chemical Company that proves that car left on X date, came within time and was switched, and there was no 48-hour violation. None of those records were produced. And on top of that, we asked them to produce all records of communications with Jones Chemical. They said they didn't have any. Just for my benefit, can you square that presumption of truth with the capable of being defamatory statement? Because there seems to be some tension between those two things. Sometimes there is. In order to move to the substantial truth analysis, I agree, you may have to assume arguendo, the literal interpretation. Even parody, the cartoon and issue in the Hustler Magazine versus Falwell case is susceptible to having a verifiable fact. You see there's two steps to it. To get in the door, it's got to be capable of being defamatory, but to get past summary judgment, you'd have to show that there's a genuine issue of fact as to whether on this record it could be false. And the lower court did not need to reach any of the substantial truth issues, because the actionability analysis was what ended the case. And then going back to the other point, or the primary point here that we get from Levinsky's and the Vayu versus NBC case, and the other precedent that's built up here, is that the statement needs to contain an easily ascertainable and objectively verifiable fact. If we're going to have a trial about whether a fact is true or false, there needs to be an easily ascertainable and verifiable fact in the statement, so that you can have a trial on it. Having gone through the experience as counsel in the Levinsky's case of having a trial on whether a store is trashy or not, and having literally every witness come to the stand with a different interpretation of trashy, we're pleased now in 2015 that we have that precedent to be able to avoid those kinds of trials. We should not have a trial in this case on whether a track is horrendously dilapidated, as the district court correctly found. The only other point I would mention is on Fink's personal claim, which has come up, his own affidavit says that there was operational dysfunction, his words, between him and his son, which came to a head, his words, in 2011, Mellon, Tim Mellon, the chair of the company, had to intervene and issue, his words, a directive that either his son or Tim Mellon, the chairman of the company, had to intervene, or his son goes, or Fink takes back control. This is his words. That to me can be fair, and our position in the case is that can be fairly characterized as Mr. Mellon removing, or at least issuing a directive that led to Mr. Fink's decision to leave office, forced his resignation. The context of the Fink article published when these rumors were floating about, and sourced by four different sources that suggested that there was some action by Mellon that led to Fink suddenly, literally almost overnight, leaving this longstanding position as head of the company, that's all fair reporting. The background story may go to a true defense, but how does that touch on whether the article itself is capable? Well, yeah, I was speaking of the truth issue, but if we go to our argument on whether it's capable or not, there's nothing in the article that says Mr. Fink was fired because of mismanagement. Well, it says he was removed, it has that coup de grace, and at the very end it talks about hopefully the son will be using the money better and in more productive ways. Right, and that is, to the extent those are facts, that's what happened. So I suppose on the Fink issue that truth is... But to the extent that it's capable of being defamatory, it's, I'm having a hard time trying to figure out why that's not. In other words, at the summary judgment stage, is that... Well, saying that someone has been terminated in and of itself is not defamatory. The main law court is held in the Picard versus Brennan case, because people can be terminated for any reason. It's the implication of why someone left. And on that point, I would suggest our stronger argument perhaps is that it was correct. It couched in figurative expression, maybe it didn't say it the way anyone else would say it. If I understand that, then you're saying that there may be a strong argument that it is capable of being defamatory, notwithstanding the Picard case? No, no, no, no. I thought you just said... No, if one were to read that... The coup de grace gives an extra implication beyond just termination. Right. We don't... If one thought there was a substantial argument, then your secondary argument is on summary judgment, you still win because they haven't met their burden of showing there's a genuine dispute as to whether it was true or not that he was forced out? Right, substantially true. They got the gist right. Just one more thing. The substantial truth is in this record? Yes.